UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LANI MAY G.,[1]

                              Plaintiff,

-vs-

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

DECISION AND ORDER

1:20-CV-6221 (CJS)

## INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Jan. 4, 2021, ECF No. 12; Def.'s Mot., Feb. 17, 2021, ECF No. 13. Plaintiff makes three arguments to justify her position that the Commissioner's denial of her application for DIB and SSI benefits should be reversed and remanded for further proceedings: (1) the Appeals Council failed to accept relevant evidence into the record; (2) the ALJ's RFC determination is not supported by substantial evidence; and, (3) the ALJ failed to evaluate Plaintiff's subjective complaints using the appropriate legal standard. Pl. Mem. of Law, 17–30, Jan. 4, 2021, ECF No. 12-1. The Commissioner disputes Plaintiff's contentions.

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 12] is granted, the Commissioner's motion [ECF No. 13] is denied, and the matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Decision and Order.

## LEGAL STANDARD

The law defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to qualify for DIB benefits, the DIB claimant must satisfy the requirements for special insured status. 42 U.S.C. § 423(c)(1). In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether a DIB or SSI claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)).

The claimant bears the burden of proof for the first four steps of the sequential evaluation. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other

work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

Plaintiff protectively filed her DIB and SSI applications on January 10, 2017, alleging a disability onset date of May 6, 2016. Transcript ("Tr."), 239–49, Sept. 1, 2020, ECF No. 8. In her applications, Plaintiff alleged that her ability to work was limited by neck problems, brachial neuritis[2], anxiety, and depression. Tr. 264. On February 23, 2017, the Commissioner determined that Plaintiff was not disabled, and that she did not qualify for either DIB or SSI benefits. Tr. 141–45. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 149.

Plaintiff's request was approved, and the hearing was held via videoconference, with the Plaintiff appearing with her counsel in Rochester, New York, and an impartial vocational expert also joining by phone. Tr. 87. When the ALJ asked Plaintiff what prevented her from working full-time, Plaintiff responded, "My neck, I've had two surgeries. I have degenerative disc disease." Tr. 92. During the course of her hearing testimony, Plaintiff stated that it hurts to turn her head to the left or the right (Tr. 93), that she has problems reaching over her head or out in front of her with her left hand (Tr. 94),

---

[2] "Brachial neuritis is a term used to describe an inflammation of the brachial plexus that causes sudden-onset shoulder and arm pain, followed by weakness and/or numbness." *Conant v. Comm'r of Soc. Sec.*, No. 3:15-CV-500 (GLS), 2016 WL 6072386, at *2 n.3 (N.D.N.Y. Oct. 17, 2016) (quoting Peter F. Ullrich, Jr., *Brachial Neuritis (Parsonage-Turner Syndrome)*, http://www.spine-health.com/conditions/neck-pain/brachial-neuritis-parsonage-turner-syndrome (last updated Oct. 21, 2011)).

and that the heaviest thing she can lift with one hand is a half-gallon of milk (Tr. 95). Plaintiff also testified that she lives alone and can do her own laundry, dishes, and dusting, but that her stepfather has to come over to do her yardwork and snow removal (Tr. 95–96), her mother has to help with chores like vacuuming (Tr. 98), and they both have to help her carry her groceries into the house (Tr. 99).

On January 15, 2019, the ALJ denied Plaintiff's claim for DIB and SSI benefits. Tr. 62. In his decision, the ALJ found that Plaintiff met the special insured status requirements of the Social Security Act through December 31, 2021. Tr. 68. At step one of the five-step evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 6, 2016, the alleged onset date. Tr. 68. At step two, the ALJ determined that Plaintiff has several severe impairments: cervical spine degenerative disc disease with spondylosis, radiculopathy, and neuritis; bilateral carpal tunnel syndrome; lumbar spine degenerative disc disease; and right De Quervain's tenosynovitis. Tr. 68. The ALJ also noted that Plaintiff had been diagnosed with gastroesophageal reflux disease (GERD),[3] had Crohn's disease that was in remission, and had been treated for helicobacter pylori and migraine headaches, but found those impairments to be non-severe. Tr. 68–69.

Also at step two, the ALJ assessed Plaintiff's mental impairments – anxiety disorder and mood disorder – utilizing the "special technique" required by 20 C.F.R. § 404.1520a and § 416.920a.[4] In so doing, the ALJ determined that Plaintiff's alleged

---

[3] "Gastroesophageal reflux disease is the backward flow (reflux) of small amounts of stomach contents into the lower portion of the esophagus. It is very common and occurs in the general population, as well as in children." § 15:73. *Esophagus disorders — Gastroesophageal reflux disease (GERD)*, 1 Attorneys Medical Advisor (Apr. 2021 Update).

[4] The Second Circuit has held that where an ALJ's failure to adhere to the regulations' special technique is

mental impairments caused only mild limitations in understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. Tr. 69–70. Because Plaintiff's mental impairments cause no more that "mild" limitation in any of the four functional areas, the ALJ found that they are non-severe. Tr. 70.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 70. In particular, the ALJ found that Plaintiff's physical impairments do not meet or medically equal any impairment listed as a disorder of the spine because the record is devoid of evidence of nerve root compression, and motor and sensory deficits. Tr. 70–71.

Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Plaintiff had the residual functional capacity[5] ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), with the following non-exertional limitations:

> [T]he individual can frequently operate hand controls, push, pull, reach, handle, finger, and feel with both upper extremities. The individual can

---

not harmless, failure to apply the "special technique" is reversible error. *See Kohler v. Astrue*, 546 F.3d 260, 265 n. 4 (2d Cir. 2008). The listings of specific mental impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 ("App'x 1 § 12.00") provide the ALJ with detailed guidance for application of the "special technique." Generally, a claimant must satisfy at least two classes of criteria to justify a finding of a mental disorder. "Paragraph A" criteria include the "the medical criteria that must be present in [a claimaint's] medical evidence" to indicate a particular disorder (e.g., the mental disorder of "schizophrenia" requires that the evidence include medical documentation of hallucinations or another similar symptom). App'x 1 § 12.00A(2)(a). "Paragraph B" criteria are four broad areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. App'x 1 § 12.00A(2)(b). A claimant must show an "extreme" limitation of one, or "marked" limitation of two, of the Paragraph B criteria. "Paragraph C" criteria are used to evaluate whether a claimant has a "serious and persistent" mental disorder.

[5] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

> frequently move her neck side to side and up and down. The individual can occasionally kneel, crouch, stoop, balance, and crawl, and can occasionally climb stairs and ramps. The individual can never climb ladders, ropes and scaffolds and can never be exposed to unprotected heights and moving mechanical parts. The individual can tolerate occasional exposure to vibration. In addition, assume that the individual is able to understand, carry out, and remember simple instructions and make simple work-relate[d] decisions. The individual will be off task 10 percent of the workday.

Tr. 71. Based on this RFC, at step four, the ALJ found that Plaintiff is unable to perform her past relevant work as a machine operator, instructor residential aide, and warehouse worker. Tr. 77. However, based on Plaintiff's age, education, work experience, and RFC, and on the testimony of the impartial VE, the ALJ found Plaintiff would be able to perform such jobs in the national economy as a cashier, mailroom clerk, and sales attendant. Tr. 78. Hence, the ALJ concluded that Plaintiff *is not* disabled for the purposes of DIB or SSI. Tr. 23–24.

On March 4, 2019, Plaintiff submitted additional evidence to the Commissioner's Appeals Council, along with a request for review of the ALJ's decision. Tr. 6. The additional evidence consisted primarily of records from Plaintiff's appointment with Dr. Seth Zeidman on January 14, 2019 for a pre-surgical screening (Tr. 27–40), and an operation on January 28, 2019 for a "cervical spinal fusion" and other spine issues (Tr. 41–61). On February 7, 2020, the Appeals Council denied Plaintiff's request for further review of the ALJ's decision. Tr. 1. The Appeals Council's denial letter stated the ALJ decided Plaintiff's case through January 15, 2019, that the medical records were from January 28–29, 2019, and consequently that the "additional evidence does not relate to the period at issue." Tr. 2. The ALJ's decision thus became the "final decision" of the Commissioner.

DISCUSSION

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner on whether a claimant has a "disability" that would entitle him or her to DIB and SSI benefits. *See also* 42 U.S.C. § 1383(c)(3). "The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted).

Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

As noted above, Plaintiff makes three arguments to justify her position that the Commissioner's denial of her application for DIB and SSI benefits should be reversed and remanded for further proceedings: (1) the Appeals Council failed to accept relevant evidence into the record; (2) the ALJ's RFC determination is not supported by substantial

7

evidence; and, (3) the ALJ failed to evaluate Plaintiff's subjective complaints using the appropriate legal standard. Pl. Mem. of Law at 17–30. For ease of discussion, the Court will address Plaintiff's arguments out of order.

<u>The ALJ's Evaluation of Plaintiff's Subjective Complaints</u>

In his decision, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence for the reasons explained in this decision." Tr. 72. Plaintiff argues that the ALJ's analysis in this regard consisted of "cherry-picking isolated treatment notes with 'normal findings on examinations' and very minimal activities of daily living," and consequently constitutes a "gross mischaracterization" of the record. Pl. Mem. of Law at 29.

> As the Second Circuit has stated,
>
> The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations. At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). That requirement stems from the fact that subjective assertions of pain alone cannot ground a finding of disability. 20 C.F.R. § 404.1529(a). If the claimant does suffer from such an impairment, at the second step, the ALJ must consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record. Id. The ALJ must consider "[s]tatements [the claimant] or others make about [his] impairment(s), [her] restrictions, [her] daily activities, [her] efforts to work, or any other relevant statements [she] make[s] to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in [its] administrative proceedings." 20 C.F.R. § 404.1512(b)(3); see also 20 C.F.R. § 404.1529(a); S.S.R. 96–7.

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

After a careful review, the Court finds no error in the ALJ's treatment of Plaintiff's subjective complaints. In his discussion of his RFC determination, the ALJ fairly summarized Plaintiff's hearing testimony regarding her limitations. Tr. 71–72. The ALJ then noted that the testimony was not "entirely consistent" with the medical record, and therefore accepted only that testimony which was consistent with the objective evidence. Tr. 72. Thereafter, the ALJ provided a thorough discussion of all medical evidence in the record, including substantial evidence – such as treatment notes and opinions from the two consultative examiners in the case – that was inconsistent with Plaintiff's testimony. Tr. 72–77. Having examined both the ALJ's decision and the entirety of the underlying administrative record, the Court finds no indication in the discussion of "cherry-picking" that led to a "gross mischaracterization."

<u>The ALJ's RFC Determination</u>

In his discussion of his RFC determination, the ALJ acknowledged that Dr. Clifford Ameduri – a pain management specialist at Rochester Brain and Spine – was Plaintiff's "treating physician," but assigned only "limited weight" to his opinion. The ALJ explained:

> Dr. Ameduri opined that the claimant could perform sedentary work; sit more than 2 hours at a time and at least 6 hours total; could stand for 20–30 minutes at a time and less than 2 hours total; needed to be able to shift positions at will; needed to take unscheduled breaks every hour; rarely perform any neck movement; never climb ladders, occasionally climb stairs, and rarely twist, stoop, and crouch/squat; occasional hand movements; and would miss more than four days per month. The medical evidence does not support this full assessment.
>
> While the undersigned agrees that the claimant can never climb ladders and would need unscheduled break [sic] (off task for 10 percent of the workday), the undersigned disagrees with the rest of the assessment. The claimant had discomfort and limited movement with left and right lateral flexion, extension, and flexion . . . . However, the claimant also had normal neck inspections and painless range of motion . . . . She had mildly limited range

9

> of motion in the back, decrease[d] flexion, extension, right and left lateral bending, and rotation to the right and left . . . . She was noted to walk with a normal gait. In addition, there were no objective signs that the claimant would miss more than four days per month.

Tr. 76 (internal citations to the record omitted).

Plaintiff maintains that the ALJ failed to give proper deference to the medical source statement of Dr. Ameduri, which indicated that Plaintiff could only "rarely" move her neck to look down, look up, or turn side to side. Tr. 1058–1060. The Commissioner counterargues that a "searching review of the record" shows that the ALJ considered the longitudinal nature of Plaintiff's treatment with Dr. Ameduri, and identified good reasons for discounting Dr. Ameduri's opinion. The Court takes no position as to the weight that should have been assigned to Dr. Ameduri's opinion, but finds that the ALJ's analysis was not sufficiently specific to enable a determination as to whether or not the "treating physician rule" at 20 C.F.R. § 404.1527(c) and § 416.927(c) was properly observed.

With respect to claims such as Plaintiff's, which were filed before March 27, 2017, the Commissioner's regulations articulate a two-step process for assigning weight to a treating physician's opinion. First, the ALJ must give "controlling weight" to a treating source's medical opinion on the issues of the nature and severity of the claimant's impairments if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record . . . ." 20 C.F.R. § 404.1527(c)(2); *see also* § 416.927(c)(2). Second,

> if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it. In doing so, it must "explicitly consider" the following, nonexclusive "*Burgess* factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence

> supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citing *Burgess*, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2))). At both steps, the ALJ must "give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R. § 404.1527(c)(2)).
>
> An ALJ's failure to "explicitly" apply the *Burgess* factors when assigning weight at step two is a procedural error. *Selian*, 708 F.3d at 419–20. If "the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment]," we are unable to conclude that the error was harmless and consequently remand for the ALJ to "comprehensively set forth [its] reasons." *See Halloran*, 362 F.3d at 33. If, however, "a searching review of the record" assures us "that the substance of the treating physician rule was not traversed," we will affirm. *See id*. at 32.

*Estrella*, 925 F.3d at 95–96.

In the present case, the ALJ committed procedural error by failing to expressly consider the *Burgess* factors in his decision.[6] The question therefore becomes whether the ALJ's decision otherwise provides "good reasons" for assigning limited weight to Dr. Ameduri's opinion. *Estrella*, 925 F.3d at 96 (citing *Halloran*, 362 F.3d at 32). The Court finds that it does not. Particularly with respect to the limitations in neck movement suggested by Dr. Ameduri, the Court is unable to discern the degree to which the ALJ considered the frequency, length and nature of treatment, as well as whether Dr. Ameduri is a specialist. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) for the proposition that although the ALJ need not reconcile every conflict in the record, his decision must set forth "the crucial factors in any determination . . . with sufficient specificity to enable [a reviewing court] to

---

[6] Defendant does not argue that the ALJ expressly considered the *Burgess* factors, but rather that a searching review of the record shows that the substance of the treating physician rule was not traversed. Def. Mem. of Law, 11, Feb. 17, 2021, ECF No. 13-1 (citing *Estrella*, 925 F.3d at 96).

decide whether the determination is supported by substantial evidence.").

As the ALJ noted in his explanation, there are instances in the record in which claimant had "normal neck inspections and painless range of motion." Tr. 76. However, of the seven instances cited by the ALJ, all are treatment notes from 2016, and only one – oddly enough, an emergency room visit for "severe" neck pain after Plaintiff fell on the ice in December 2016 (Tr. 374) – indicates painless range of motion. By contrast, there are a number of records from 2017 and 2018 in which either Dr. Ameduri or a nurse or other doctor in the Rochester Brain and Spine practice assessed range of motion as "painful" (Tr. 541, from January 6, 2017), "highly restricted" (Tr. 798, from January 19, 2017), "has ongoing severely restricted ROM" (Tr. 806, from March 2017), "limited" (Tr. 832, from June 2017), and with limited extension, flexion, and rotation (Tr. 1205, from May 2018; Tr. 1045, 1205 from August 2018; and Tr. 1222–23, from September 2018). Even the opinion of consultative medical examiner Dr. Rita Figueroa,[7] which the ALJ gave "some weight," was in February 2017. The difference is potentially significant: whereas the 2016 assessments followed upon Plaintiff's first cervical spine fusion surgery, the 2017 and 2018 assessments may indicate a worsening condition that led to Plaintiff's second cervical spine fusion surgery in July 2017.[8] *See, e.g.,* Tr. 1225 (noting Plaintiff's second surgery).

---

[7] As opposed to Dr. Ameduri's assessment in 2018 that Plaintiff could "rarely" perform neck movements, Dr. Figueroa opined that she had only a "moderate limitation to turning movement of the neck." Tr. 550.

[8] Plaintiff also had a third cervical spine fusion surgery shortly after the ALJ rendered his decision (*see* Tr. 45 *et seq.*), which Plaintiff had mentioned as a probability at her hearing before the ALJ. Specifically, Plaintiff stated that, "I'm hoping [the third surgery] will take away some of the pain, and the numbness I have, and the . . . ability to move a little better." Tr. 92–93.

Additionally, it is not clear whether the ALJ considered the extent to which Dr. Ameduri is a specialist. In his discussion of the medical evidence, the ALJ noted the various limitations and ailments regarding Plaintiff's neck and cervical spine, but noted "the claimant had normal neck inspections and painless range of motion . . . . [s]he had full range of motion, and her neck was noted as supple." Tr. 74. In addition to the ALJ's citations dating primarily to 2016 or before, as opposed to 2017 and 2018, it is notable that most of the citations are also to non-experts in spinal conditions, and from office or hospital visits unrelated to her neck and spine. For example, there is a string of three citations to instances in which the treatment notes indicate a "supple" neck on a general physical examination, but each of these instances came when Plaintiff sought help for rectal bleeding and other gastrointestinal issues from her gastroenterologist, Dr. Raymond M. Thomas (Tr. 598), her primary care physician (Tr. 619), and a nurse practitioner in Dr. Thomas' office (Tr. 661). Dr. Ameduri, on the other hand, is a pain management specialist with the Rochester Brain and Spine Center, the practice that conducted both of Plaintiff's cervical spine fusion surgeries that were on the record before the ALJ. *See, e.g.,* Tr. 1094–1097 (for records of Dr. Ameduri's "Comprehensive Initial Evaluation" of Plaintiff in March 2017). It is unclear whether the ALJ considered Dr. Ameduri's expertise compared with the other treatment providers he referenced.

Accordingly, the Court finds that this matter must be remanded to the ALJ to correct the procedural error regarding the ALJ's evaluation of Dr. Ameduri's opinion evidence.

<u>The Appeals Council</u>

Lastly, the Court turns to Plaintiff's argument regarding the Appeals Council. The Appeals Council declined to consider the new evidence that Plaintiff submitted after the

13

ALJ's decision denying her benefits because, the Council stated, the evidence "does not affect the decision about whether [Plaintiff was] disabled beginning on or before January 15, 2019." Tr. 2. Plaintiff maintains that the Appeals Council erred in two respects. First, Plaintiff argues that the Appeals Council's finding that the newly submitted evidence did not relate to the period at issue was "simply inaccurate" because Plaintiff's January 28, 2019 surgery relates to persistent symptoms noted in the record as early as August 2018. Pl. Mem. of Law at 17–18. Second, Plaintiff argues that "[t]he Appeals Council was required to provide more than a boilerplate rejection of the evidence." Pl. Mem. of Law at 17. In addition, Plaintiff attempts to introduce two additional pieces of evidence into the record: medical source statements and records from Plaintiff's spine surgeon, Dr. Zeidman. Pl. Mem. of Law (Exhibits A and B). The Court declines to order the ALJ to consider the evidence from Dr. Zeidman, but agrees that the Appeal Council's finding was inaccurate.

20 C.F.R. § 404.970(a)(5) and § 416.1470(a)(5) permit the Appeals Council to review an ALJ's hearing decision if "the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." *See, e.g., Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015). In submitting additional evidence for Appeals Council review, the claimant must show "good cause" for not submitting the evidence at previous stages in her case. *See* 20 C.F.R. § 404.970(b) and § 416.1470(b).

Because the new evidence submitted by Plaintiff to the Appeals Council did not exist at the time of the ALJ's hearing, there is no question that the evidence is "new." *See*

14

*Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004). Further, Plaintiff has shown "good cause" pursuant to § 404.970(b) to the extent that she notified the ALJ at the hearing that she was going to see her neurosurgeon soon after her hearing to schedule a third surgery that would extend her spinal fusion down into the thoracic spine. Tr. 92–93. The ALJ acknowledged that discussions of the need for the third surgery were already in Plaintiff's medical records. Tr. 92. On the other hand, the Court finds that Plaintiff has not shown good cause for her failure to obtain a medical source statement from Dr. Zeidman prior to the ALJ's decision: Dr. Zeidman conducted both Plaintiff's 2016 and her 2017 cervical spine fusions.

The only issue, then, is whether the evidence of Plaintiff's third surgery is "material." With respect to materiality, the Second Circuit has stated that:

> New evidence is 'material' if it is both (1) "relevant to the claimant's condition during the time period for which benefits were denied" and (2) "probative" . . . . "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently."

*Pollard*, 377 F.3d at 193 (quoting *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (internal quotation marks omitted)).

First, notwithstanding the Commissioner's argument to the contrary, the Court finds that the new evidence that Plaintiff offered was relevant to the time period for which benefits were denied. Although the new evidence consists of documents generated from a presurgical appointment one day prior to the date of issue of the ALJ's decision, and the surgery was conducted two weeks *after* the decision, this does not necessarily mean that it had no bearing on the Commissioner's evaluation of Plaintiff's claims. To the contrary, the evidence of a third surgery directly supports many of her earlier contentions

15

regarding the severity and persistence of her spinal issues. *See* Tr. at 93. It suggests the reasonable possibility that, during the relevant time period, Plaintiff's condition was more serious than previously thought [9] and that additional impairments existed during the period at issue. Indeed, the Second Circuit has observed, repeatedly, that evidence bearing upon an applicant's condition subsequent to the relevant period "may disclose the severity and continuity of impairments existing before [the relevant period] or may identify additional impairments which could reasonably be presumed to have been present . . . ." *Lisa v. Secretary of Dep't of Health and Human Serv.*, 940 F.2d 40, 44 (2d Cir. 1991) (internal quotation marks omitted).

Second, the Court finds that the new evidence was probative and likely to affect the ALJ's consideration of Plaintiff's claim. As noted above, the ALJ's decision frequently cited treatment notes from 2016, which reflected physical examinations made before Plaintiff's July 2017 cervical spine fusion surgery and her January 2020 surgery. Medical evidence is not stale simply because time has passed. *Cruz v. Commissioner of Social Security*, 1:16-CV-00965, 2018 U.S. Dist. LEXIS 128514, 2018 WL 3628253 (W.D.N.Y. July 31, 2018). However, "a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." *Whitehurst v. Berryhill*, 1:16-CV-01005, 2018 U.S. Dist. LEXIS 137417, 2018 WL 3868721 (W.D.N.Y. Aug. 14, 2018). "A stale medical opinion, like one that is rendered before a surgery, is not substantial evidence to support an ALJ's finding." *See Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y.

---

[9] On this point, the Court disagrees with the Commissioner, who argues that Plaintiff's testimony at her hearing before the ALJ put the ALJ on notice of the pending third surgery, and therefore that the ALJ presumed Plaintiff would have the third surgery in reaching his RFC determination. The Court finds no evidence of the ALJ's consideration of the third surgery in the RFC discussion.

2015), aff'd, 652 F. App'x 25 (2d Cir. 2016) (citation omitted). Here, the medical evidence submitted to the Appeals Council involved the same condition that necessitated two prior surgeries within the period at issue, and potentially indicated a worsening in Plaintiff's condition sufficient to warrant a third surgery. Based on the new evidence submitted by Plaintiff, then, the ALJ or Appeals Council might be persuaded to find that, during the relevant time period, Plaintiff was more limited in her neck movements or other capabilities than the ALJ initially assessed.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings [ECF No. 12] is granted, and the Commissioner's motion for judgment on the pleadings [ECF No. 13] is denied. This matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Decision and Order.


DATED:       August 31, 2021
             Rochester, New York


                                     /s/ Charles J. Siragusa
                                    CHARLES J. SIRAGUSA
                                    United States District Judge